USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/4/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                        :
SMARTSTREAM TECHNOLOGIES, INC.,    :
                                                        :
                            Plaintiff,            :
                                                        :              17-CV-2459 (VSB)
                                -v-                                :
                                                        :              **OPINION & ORDER**
PHILIPPE CHAMBADAL,                        :
                                                        :
                                           Defendant.    :
                                                        :
------------------------------------------------------------ X

Appearances:

Meghan E. Hill
Jill S. Kirila
Squire Patton Boggs (US) LLP
New York, New York
*Counsel for Plaintiff*

Jonathan S. Sack
Eric R. Stern
Sack & Sack, LLP
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff and Counter-Defendant SmartStream Technologies, Inc. ("SmartStream" or

"Plaintiff") brings this action against Defendant and Counter-Claimant Philippe Chambadal

("Chambadal" or "Defendant") based on Chambadal's alleged violation of the Defend Trade

Secrets Act, 18 U.S.C. § 1836, and for breach of contract and misappropriation. Before me is

Plaintiff's motion to dismiss Defendant's counterclaims for breach of contract, breach of the

covenant of good faith and fair dealing, accounting, and unjust enrichment, for failure to state a

claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (Doc. 42.) Because I find that Defendant fails to plausibly allege a claim for breach of contract, breach of the covenant of good faith and fair dealing, accounting, and unjust enrichment, Plaintiff's motion is GRANTED.

I. **Background**[2]

SmartStream is a global company that provides software and managed services to banks, asset managers, custodians, and broker dealers. (Counterclaims ¶ 15.)[3] Defendant worked for SmartStream as Chief Executive Officer from January 2009 through April 2016. (*Id.* ¶ 22.) On or around May 2, 2014, Defendant was awarded an option to acquire one million shares in D-CLEAR EUROPE Limited, SmartStream's parent company, pursuant to the Long Term Incentive Plan of SmartStream Technologies Group (the "Plan"). (*Id.* ¶ 68.)

On April 29, 2016, a new CEO of SmartStream was appointed and Defendant continued working for SmartStream in a non-officer business role. (*Id.* ¶ 61.) On January 5, 2017, SmartStream notified Defendant of his termination, providing him ninety days written notice of the termination decision and informing him that he would be on "garden leave" until April 4, 2017, the effective date of his termination. (Compl. ¶ 6; Ans. ¶ 6.)[4] SmartStream informed

---

[1] In addition to SmartStream, Defendant names Investment Corporation of Dubai ("ICD") and Khalifa Al Daboos ("Daboos") as defendants in his Counterclaims. However, there is no record that Defendant has served ICD or Daboos. Pursuant to Federal Rule of Civil Procedure 4(m), if a defendant is not served within 90 days "the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *see also Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94 Civ. 5620(JFK), 1999 WL 64283, at *8 (S.D.N.Y. Feb. 8, 1999) (dismissing counterclaims based on failure to effect service in accordance with Rule 4(m)). Accordingly, Defendant is directed to show cause as to why he has failed to serve ICD and Daboos. *See infra* Part V.

[2] I assume Plaintiff's allegations contained in the Complaint, (Doc. 2), to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[3] "Counterclaims" refers to Defendant's Counterclaims contained in Defendant's Verified Answer, filed on May 24, 2017. (Doc. 30.) "Counterclaim" refers to a specific claim within the Counterclaims.

[4] "Compl." refers to Plaintiff's Verified Complaint ("Complaint"), filed on April 5, 2017. (Doc. 2.) "Ans." refers to

2

Defendant that he was not to perform any further employment duties during the garden leave period except as specifically directed by SmartStream. (Compl. ¶ 13.)

On January 23, 2017, approximately three weeks after SmartStream notified Defendant that his employment was terminated, Defendant wrote a letter to SmartStream indicating that he intended to exercise his option under the Plan. (Counterclaims ¶¶ 68–70; Pl.'s Mem. Ex. 3.)[5] Defendant claims that he decided to exercise his option because he anticipated that certain executives were preparing the sale of SmartStream to a strategic buyer for $500 million. (Counterclaims ¶¶ 65, 68–70; Pl.'s Mem. Ex. 3.) Defendant contends that he satisfied all conditions precedent in order to be paid the full value of his option under the Plan— approximately $25 million. (Counterclaims ¶¶ 71–72.) Despite Defendant having fully performed under the Plan, "SmartStream breached the express terms of the Plan by failing to honor its agreement with Defendant and by lapsing his duly earned award." (*Id.* ¶ 73.)

## II. Procedural History

Plaintiff commenced this action by filing its Complaint on April 5, 2017, for misappropriation of SmartStream's trade secrets and breach of Chambadal's Confidentiality Agreement. (*See generally* Compl.) SmartStream asserts that Defendant possesses confidential information belonging to SmartStream and that Defendant is retaining and using SmartStream's proprietary information to compete with and/or otherwise harm SmartStream. (*Id.*)

On April 10, 2017, after a hearing on the matter, I entered a temporary restraining order enjoining Defendant from accessing Plaintiff's confidential information and trade secrets that

---

Defendant's Verified Answer, filed on May 24, 2017. (Doc. 30.)

[5] "Pl.'s Mem." refers to the Memorandum of Law in Support of Plaintiff's Motion to Dismiss Defendant's Counterclaims, filed August 29, 2017 ("Plaintiff's Memorandum"). (Doc. 42-1.) As explained below, I rely on certain documents properly attached as exhibits to Plaintiff's Memorandum. *See infra* Part III.

3

Defendant possessed by virtue of his positions with Plaintiff, and ordering Defendant to turn over any physical materials containing any such information to his legal counsel for safekeeping. (*See* Doc. 16.)

On April 12, 2017, Plaintiff filed a memorandum of law in support of an order to show cause for preliminary injunction, along with an affirmation of Meghan E. Hill in support. (Docs. 14, 15.) On April 13, 2017, I issued an order to show cause for preliminary injunction. (Doc. 16.) On May 10, 2017, Defendant filed a memorandum of law in opposition to the order to show cause, along with an affidavit of Philippe Chambadal and affirmation of Jonathan Sack in support. (Docs. 25, 26, 27.) On May 16, 2017, Plaintiff filed a reply memorandum, along with a declaration of Haytham Kaddoura in support. (Docs. 28, 29.) On May 17, 2017, following oral arguments, I directed the parties to submit a consent order for an injunction. On August 1, 2017, the parties filed a consent order, which I signed, enjoining Defendant from possessing, disclosing, or otherwise misappropriating Plaintiff's confidential information, trade secrets, or documents, and mandating that Defendant return to Plaintiff any of Plaintiff's confidential information or property in Defendant's possession, and produce for inspection to a third-party vendor certain computers, devices, email accounts, and cloud drives. (Doc. 40.)

On May 24, 2017, Defendant filed his Verified Answer, Affirmative Defenses, and Counterclaims. (Doc. 30.) The Counterclaims are unrelated to the allegations in the Complaint, and allege SmartStream's breach of the Plan. On June 14, 2017, Plaintiff filed a notice of foreign law indicating that it intended to raise issues of English law in its anticipated motion to dismiss. (Doc. 33.) On August 29, 2017, Plaintiff filed its motion to dismiss Defendant's Counterclaims, including a memorandum and exhibits in support. (Docs. 42, 42-1, 42-2, 42-3, 42-4.) On September 19, 2017, Defendant filed a memorandum of law in opposition. (Doc. 45.)

4

On October 3, 2017, Plaintiff filed its reply memorandum, (Doc. 47), at which point the motion was fully briefed.

### III. Legal Standard

The pleading standard applicable to complaints under Federal Rule of Civil Procedure 12(b)(6) applies equally to counterclaims. *See Gerdau Ameristeel U.S. Inc. v. Ameron Int'l Corp.*, No. 13 Civ. 07169(LGC), 2014 WL 3639176, at *2 (S.D.N.Y. July 22, 2014) ("Federal Rule of Civil Procedure 12(b) applies equally to claims and counterclaims; therefore, a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint."); *Wells Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) (noting that a "motion to dismiss counterclaims is governed by Rule 12(b)(6)").

To survive a motion to dismiss under Rule 12(b)(6), counterclaims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A counterclaim will have "facial plausibility when the [defendant] pleads factual content that allows the court to draw the reasonable inference that the [plaintiff] is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a [plaintiff] has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the [counterclaims], the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render [defendant's] inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the counterclaims and must draw all reasonable inferences in the defendant's favor. *See Kassner*, 496 F.3d at 237. The counterclaims need not make "detailed factual allegations,"

but must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the counterclaims are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

Finally, in deciding a motion to dismiss, a court may consider the full text of documents that are quoted in or attached to the Counterclaims, or that the defendant either possessed or knew about and relied upon in bringing the claims. *See Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir. 2000); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir. 1996). Here, Defendant refers to and relies upon the Plan, his letter notifying Plaintiff of his intent to exercise his option, and Plaintiff's letter informing Defendant of his termination, but does not attach the documents to his Counterclaims. Plaintiff has included copies of these documents as exhibits to its motion to dismiss and these documents are properly before the Court.[6]

## IV. Discussion

Plaintiff moves to dismiss all of Defendant's counterclaims against SmartStream on the grounds that Defendant's allegations are insufficient to state a claim upon which any relief may be granted. I address Plaintiff's arguments with regard to each of Defendant's counterclaims in turn below.

### A. *Breach of Contract Counterclaims*

#### 1. Contractual Choice of Law Clause

The Plan contains a choice of law clause stating that "[t]he formation, existence,

---

[6] On August 25, 2017, Plaintiff submitted a request that the Plan be filed under seal due to its confidential nature, (Doc. 41), which I granted on August 29, 2017, (Doc. 43).

construction, performance, validity and all aspects whatsoever of the Plan, any term of the Plan and any Award made under it shall be governed by English law." (Plan § 14.1.)[7] "[A]bsent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000); *see also Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362 (2d Cir. 1993) ("The Supreme Court certainly has indicated that forum selection and choice of law clauses are presumptively valid where the underlying transaction is fundamentally international in character."). Contractual choice of law clauses apply to substantive issues whereas matters of procedure are governed by the law of the forum. *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 214 (S.D.N.Y. 2006). Moreover, "a contractual choice-of-law provision governs only a cause of action sounding in contract . . . unless the express language of the choice-of-law provision is sufficiently broad as to encompass the entire relationship between the contracting parties." *Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 425–26 (S.D.N.Y. 2006) (citation omitted).

Pursuant to the Plan's choice of law clause, Plaintiff asserts that Defendant's breach of contract and breach of the duty of good faith and fair dealing counterclaims should be governed by English law.[8] (Pl.'s Mem. 7.) In response, Defendant makes no reference to the Plan's choice of law clause. (*See* Def.'s Mem. 4–10.)[9] Because there is no indication of fraud or violation of public policy, there appear to be sufficient contacts with England—the option was

---

[7] "Plan" refers to the SmartStream Technologies Group Long Term Incentive Plan, attached as Exhibit 2 to Plaintiff's Memorandum. (Doc. 42-3.)

[8] Prior to filing its motion to dismiss, Plaintiff also filed a Notice of Foreign Law Pursuant to Fed. R. Civ. P. 44.1 indicating its intention to raise issues of English law. (Doc. 33.) Defendant did not file a response to this notice.

[9] "Def.'s Mem." refers to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Defendant's Counterclaims, dated September 19, 2017. (Doc. 45.)

awarded to Defendant by the board of D-CLEAR EUROPE Limited, a company incorporated in England and Wales—and because Defendant does not contest the applicability of the choice of law clause, I apply English law with regard to the motion to dismiss the contract counterclaims.

## 2. Breach of Contract

In accordance with the Plan's choice of law clause, Plaintiff cites English law to support its argument that the breach of contract Counterclaim should be dismissed.[10] Defendant, making no reference to the choice of law clause and citing only New York law, does not refute or otherwise address Plaintiff's analysis under English law. I interpret Defendant's silence as acquiescence to Plaintiff's application of the proffered English law. *See, e.g.*, *Felske v. Hirchmann*, No. 10 Civ. 8899(RMB), 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) (opining that "[a] Plaintiff effectively concedes a defendant's arguments by his failure to respond to them").

As Plaintiff outlines, a breach of contract claim generally cannot avoid dismissal under English law when a condition to payment pursuant to a contractual agreement has not been met. *See Hare v. Nicoll* [1966] 1 All ER 285, [1966] 2 QB 130. In *Hare*, an option agreement provided plaintiff with an option to repurchase shares from the defendant if plaintiff provided both notice of his intention to repurchase the shares and payment by certain dates. *Id.* While plaintiff provided timely notice of his intention to repurchase the shares, he did not provide payment by the date indicated in the agreement. *Id.* When plaintiff later tendered payment, defendant declined to execute the agreement claiming that the option to repurchase had lapsed. *Id.* Plaintiff then sued for breach of contract. *Id.* Following a trial, the court found that

---

[10] Plaintiff cites New York law in alternative support of its argument. (Pl.'s Mem. 7–10.) However, because I find that the Plan's choice of law clause governs, I evaluate Plaintiff's arguments only under English law.

defendant could not be in breach because the option to purchase "must be exercised strictly in accordance with the conditions stipulated . . . and there had not been compliance with the condition for payment by that date" and dismissed the claim for breach of the option agreement. *Id.*

Here, Plaintiff claims that Defendant's breach of contract Counterclaim fails because Defendant has not pled facts demonstrating that two conditions to his ability to exercise his option have been met: (1) that a triggering "Exit" event has occurred and (2) that Defendant was in a position of "Relevant Employment." (Pl.'s Mem. 8–9.) With regard to the triggering event, the Plan indicates that "Options may be exercised immediately prior to an Exit." (Plan § 3.1.) An Exit is defined as a takeover whereby a person acquires all of the ordinary shares of the company, an initial public offering, or certain other limited circumstances determined by the board of directors. (*Id.* §§ 5.1–5.3.) While Defendant concedes that no Exit event has occurred, (*see* Counterclaims ¶¶ 65–66), he contends that under a plain reading of the Plan, an Exit event is not a requisite condition that must be satisfied for a plan participant to exercise options, but that options *may* be exercised prior to an Exit, (Def.'s Mem. 6–7). Defendant claims that he satisfied the condition because he believed that SmartStream was in the process of preparing for a sale to a strategic buyer for $500 million and he exercised his option prior to that anticipated sale. (*Id.*)

Defendant's strained interpretation of the word "may" is an unreasonable attempt at creating ambiguity in the Plan language where none exists and is insufficient to defeat dismissal. Defendant ignores the portion of § 3.1 of the Plan that limits a plan participant's ability to exercise options strictly in accordance with §§ 5.1–5.3. Section 3.1 states that "Options may be exercised immediately prior to an Exit as set out in Rules 5.1 to 5.3." (Plan § 3.1) Sections 5.1–5.3 then specify the vesting dates and exercise rights that are triggered upon occurrence of a

"Takeover," "Initial Public Offering," or "Other Circumstances." (*Id.* §§ 5.1–5.3.) Here, Defendant claims that he believed that SmartStream was in the process of preparing for a sale to a strategic buyer. Therefore, § 5.1 of the Plan applies to Defendant's alleged scenario. Section 5.1 states in relevant part:

> 5.1 Takeover
>
> Where a person acquires all of the Ordinary Shares of the Company, all Awards shall Vest on that date . . . . The Options may be exercised on the date when the person making the offer has acquired all of the Ordinary Shares. If not so exercised, the Options shall lapse immediately following the person acquiring all of the ordinary shares of the Company.

(*Id.* § 5.1.) The Plan clearly states that a participant's options do not vest until the day that a person acquires all shares of the company, and options cannot be exercised until vested according to the language of the plan. Therefore, under § 5.1—the specific provision of the Plan that addresses the "sale to a strategic buyer" scenario alleged in the Counterclaims—Defendant could only exercise his options "on the date when the person making the offer has acquired all of the Ordinary Shares." (*Id.*) No sale has occurred; therefore, under the terms of the Plan, Defendant has not properly exercised his option.

In any event, Defendant's proposed interpretation of the Plan language—that an Exit event is not a requisite condition that must be satisfied for a plan participant to exercise options—would require the company to cash out any and all plan participants at any point in time, without regard to any Exit event or other required vesting and exercise conditions. This proposed interpretation is illogical and would render § 5 of the Plan—which delineates the vesting schedule and exercise rights that become triggered upon occurrence of certain defined Exit events—meaningless. *See* 1 Chitty on Contracts § 12-063 (2012) ("The deed must be read as a whole in order to ascertain the true meaning of its several clauses, and the words of each

10

clause should be interpreted as to bring them into harmony with the other provisions of the deed if that interpretation does no violence to the meaning of which they are naturally susceptible.") (quoting *N.E. Ry. v. Hastings* [1900] A.C. 260, 267); *see also Antaios Compania SA v. Salen AB (The Antaios)* [1985] A.C. 191, 201 ("[I]f detailed semantic and syntactical analysis of words in a commercial contract is going to lead to a conclusion that flouts business commonsense, it must be made to yield to business commonsense.").[11] Defendant's alternative interpretation that he complied with the terms of the Plan since he believed that "Smartstream was preparing for the sale to a strategic buyer" is inconsistent with his first interpretation that no pre-condition was necessary. This alternative interpretation also makes no sense since it would mean that plan participants' ability to exercise their options could be based on their subjective belief that an Exit event was going to occur. In other words, this interpretation does not make "business commonsense," and cannot be the intent of the parties. For these reasons, I disagree with Defendant's interpretation of the Plan language related to a triggering Exit event, and, because Defendant has not satisfied this condition precedent, I need not evaluate whether Defendant was in a position of "Relevant Employment."

Accordingly, because a breach of contract claim cannot avoid dismissal when a condition to payment has not been met, I find that Defendant's Counterclaim for breach of contract is implausible on its face.[12]

---

[11] Defendant, again citing only New York law, also argues that New York law does not favor conditions precedent. (Def.'s Mem. 9.). However, under English law—the governing law of the Plan—such conditions are not disfavored. *See Hare*, 2 Q.B. 130 ("[A]n option is a species of privilege for the benefit of the party on whom it is conferred . . . . [I]t is for the party to comply strictly with the conditions stipulated for the exercise of the option.").

[12] Plaintiff also contends that Defendant's breach of contract Counterclaim should be dismissed because Defendant failed to comply with the notice requirement for exercise as set forth in the Plan. (Pl.'s Reply 2 n.2.) Because I find that this Counterclaim is dismissed on other grounds, I do not address Plaintiff's alternative argument for dismissal. "Pl.'s Reply" refers to the Reply Memorandum of Law in Support of Plaintiff SmartStream Technologies, Inc.'s Motion to Dismiss Defendant's Counterclaims, filed on October 3, 2017. (Doc. 47.)

### 3. Breach of the Duty of Good Faith and Fair Dealing

Plaintiff contends that English law also governs Defendant's breach of good faith and fair dealing Counterclaim, which Defendant does not refute. Indeed, Defendant acknowledges that "there is no separate cause of action for a breach of the covenant of good faith and fair dealing." (Def.'s Mem. 4 n.1.) Because Defendant concedes this Counterclaim does not state a separate cause of action and, as set forth below, English law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing, Defendant's good faith and fair dealing Counterclaim must be dismissed.

"It is well established that English case law does not recognize any general implied duty of good faith and fair dealing." *Medline Indus. Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 864 (N.D. Ill. 2002) (citing *Baird Textile Holdings Ltd. v. Marks & Spencer*, [2002] 1 All E.R. 737 (C.A.) (applying English law pursuant to contractual choice of law clause and dismissing plaintiff's good faith and fair dealing claim because such cause of action is not available under English law)). In *Baird*, the plaintiff argued that the defendant, through a consistent course of conducting its relationship with Baird Textile, had implicitly agreed to deal with the plaintiff in good faith. *Baird Textile Holdings*, [2002] All E.R. 737. The court rejected Baird's position, stating that "[t]he presence in the suggested contractual formulation of implied duties of good faith is an additional barrier in the way of the conclusion for which Baird contends, in view of English law's general refusal to recognize any duty of this nature as an implied contractual term." *Id.*; *see also Dover v. British Airways, PLC (UK)*, No. 12 CV 5567 (RJD) (CLP), 2017 WL 4358726, at *4 (E.D.N.Y. Sept. 29, 2017) (affirming that "English law does not recognize a general obligation of good faith and fair dealing implied in all contracts").

Consequently, Defendant's good faith and fair dealing Counterclaim is dismissed.

### B. *Equitable Counterclaims*

The parties agree that Defendant's equitable counterclaims are not governed by the Plan's contractual choice of law provision and are properly evaluated under New York law. (*See* Pl.'s Mem. 13–17; Def.'s Mem. 10–12.)

#### 1. Accounting

An accounting is an equitable remedy entitling a principal to require his fiduciary to show what the fiduciary did with the principal's property or money. *See Wilde v. Wilde*, 576 F. Supp. 2d 595, 607 (S.D.N.Y. 2008). To survive a motion to dismiss a claim for an accounting, a party must allege facts sufficient to show "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the [plaintiff] imposing upon [it] a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009) (internal quotation marks omitted). Even assuming the facts in the Counterclaims to be true and drawing all inferences in Defendant's favor, Defendant does not plausibly allege facts to establish the first three prongs necessary to demonstrate a claim for an accounting.

Regarding the first two criterion, "[t]he right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." *WSP USA Corp. v. Marinello*, No. 13 Civ. 4591 PKC, 2013 WL 6704885, at *8 (S.D.N.Y. Dec. 19, 2013) (internal quotation marks omitted). "While acknowledging the amorphous nature of a fiduciary relationship, New York courts have generally described it as one in which a party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162,

191 (S.D.N.Y. 2011) (internal quotation marks omitted). An employee-employer relationship is insufficient to establish a fiduciary role. *WSP USA Corp.*, 2013 WL 6704885, at *8; *see also NEM Re Receivables, LLC v. Fortress Re, Inc.*, 173 F. Supp. 3d 1, 6 (S.D.N.Y. 2016) (noting that a "conventional business relationship, without more, does not become a fiduciary relationship by mere allegation") (internal quotation marks omitted). In addition, parties in a contractual relationship "do not ordinarily bear a fiduciary relationship to one another unless they specifically so agree." *NEM Re Receivables, LLC*, 173 F. Supp. 3d at 6 (internal quotation marks omitted); *see also Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 550 (S.D.N.Y. 2007) ("Moreover parties dealing at arms length in a commercial transaction lack the requisite level of trust or confidence between them necessary to give rise to a fiduciary obligation, absent extraordinary circumstances.").

Defendant fails to sufficiently plead that he and Plaintiff maintained a fiduciary relationship or that he entrusted Plaintiff with property based on a fiduciary relationship. Defendant contends that Plaintiff "owed Chambadal a fiduciary duty, as he was the Chief Executive Officer of SmartStream" and that Plaintiff is "wrongfully in possession of monies and property." (Counterclaims ¶¶ 91, 92.) Defendant's bare, conclusory claims merely establish that Plaintiff and Defendant had a typical employer-employee relationship and dealt at arm's length to execute an ordinary commercial transaction. The allegations are not adequate to support Defendant's Counterclaim for an accounting. *See Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, No. 04 Civ. 704(RPP), 2005 WL 1214281, at *14 n.25 (S.D.N.Y. May 20, 2005) (granting motion to dismiss claim for an accounting where facts alleged did not establish existence of fiduciary relationship).

Even if Defendant had adequately alleged a fiduciary relationship, an accounting would

still be inappropriate because an "accounting claim is not proper where money damages are recoverable under alternative causes of action for the same injury." *CSI Inv. Partners II, L.P. v. Cendant Corp.*, 507 F. Supp. 2d 384, 425 (S.D.N.Y. 2007). "[A]n equitable accounting claim cannot coexist with a breach of contract claim covering the same subject matter," *Ellington Credit Fund*, 837 F. Supp. 2d at 207, because "a plaintiff would be able to obtain the information and damages through discovery of his or her breach of contract claim, and thus, he or she has an adequate remedy at law," *Najjar Grp., LLC v. W. 56th Hotel LLC*, No. 14-CV-7120(RA), 2017 WL 819487, at *3 (S.D.N.Y. Mar. 1, 2017). Here, Defendant's claim for an accounting fails because he does not dispute the existence of a contract—the Plan—and has asserted a breach of contract claim covering the same subject matter. Stated differently, Defendant's claims for both an accounting and breach of contract stem from Plaintiff's alleged breach of the Plan and the subsequent lapse of Defendant's award.

Therefore, Defendant is not entitled to an accounting and his Counterclaim is dismissed.

### 2. Unjust Enrichment

Defendant's Counterclaim for unjust enrichment alleges that Plaintiff's "conduct with respect to [Defendant] is actionable as a breach of contract based upon Quantum Meruit under New York's quasi contract law." (Counterclaims ¶ 112.) Under New York law, unjust enrichment and quantum meruit claims are analyzed together as a single quasi-contract claim. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005). It is well settled that "the existence of a valid contract governing the subject matter generally precludes recovery in quasi contract for events arising out of the same subject matter." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 157 F. Supp. 3d 352, 370–71 (S.D.N.Y. 2016) (internal quotation marks omitted); *see also Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494

15

F. App'x 153, 157–58 (2d Cir. 2012) (affirming dismissal of quantum meruit/unjust enrichment claims where an express contract covered the subject matter of the dispute); *cf Knudsen v. Quebecor Printing (U.S.A.) Inc.*, 792 F. Supp. 234, 237 (S.D.N.Y. 1992) (noting that courts generally dismiss claims for quantum meruit and unjust enrichment when it is clear from the face of the complaint that there exists a valid contract that clearly controls, but that when the existence of the contract is in dispute, a party may plead breach of contract and quantum meruit/unjust enrichment in the alternative).

Defendant relies on the Plan in setting forth his quasi-contract claims and demanding $25 million in damages. (*See* Counterclaims ¶¶ 107–12.) In doing so, Defendant explicitly contends that the Plan is a valid and enforceable agreement and that it governs the subject matter of the claims at issue. Indeed, Defendant does not claim or suggest that the Plan is not a valid contract.

Accordingly, Defendant's Counterclaim for unjust enrichment must be dismissed.

## V. Conclusion

For the reasons stated herein, Plaintiff's motion to dismiss, (Doc. 42), is GRANTED, and the Counterclaims are dismissed.

Furthermore, as noted above, defendants ICD and Daboos have not been served with the Counterclaims. Accordingly, it is hereby ORDERED that Defendant show cause in writing as to why he has failed to serve the Counterclaims within the 90 days prescribed by Rule 4(m) of the Federal Rules of Civil Procedure. If Defendant fails within thirty days to show good cause why such service was not timely made, I will dismiss the Counterclaims against defendants ICD and Daboos.

SO ORDERED.

Dated: April 4, 2018
       New York, New York

*[signature]*
Vernon S. Broderick
United States District Judge