UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X

SMARTSTREAM TECHNOLOGIES, INC.,          :          Case No. 1:17-cv-02459

              Plaintiff,          :          Judge Vernon S. Broderick
                                                Magistrate Judge Henry B. Pitman

    -against-          :

PHILIPPE CHAMBADAL,          :          **SMARTSTREAM TECHNOLOGIES,
                                        INC.'S MEMORANDUM OF LAW
              Defendant.          :          IN SUPPORT OF ITS MOTION FOR
                                        SUMMARY JUDGMENT**

                                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X

February 15, 2019          Respectfully submitted,

                            */s/ Meghan E. Hill*
                            Meghan E. Hill (MH1523)
                            Jill S. Kirila (*pro hac vice*)
                            Kristine Woliver (*pro hac vice*)
                            SQUIRE PATTON BOGGS (US) LLP
                            30 Rockefeller Plaza, 23rd Floor
                            New York, New York 10112
                            Telephone:  +1.212 872 9800
                            Facsimile:  +1.212 872 9815
                            *meghan.hill@squirepb.com*
                            *jill.kirila@squirepb.com*
                            *kristine.woliver@squirepb.com*

                            *COUNSEL FOR PLAINTIFF
                            SMARTSTREAM TECHNOLOGIES, INC.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 6

LEGAL ARGUMENT ........................................................................................... 6

I.    STANDARD OF REVIEW ........................................................................... 6

II.   DEFENDANT IS LIABLE FOR BREACH OF CONTRACT AS A MATTER OF LAW .................................................................................................... 7

    A.    It Is Undisputed That Defendant Entered Into The Agreement and SmartStream Performed Under the Agreement ................................... 7

    B.    Defendant Admits He Breached The Agreement ................................. 8

    C.    SmartStream Has Been Damaged By Defendant's Breaches ............................ 11

        1.    SmartStream Is Entitled To Attorneys' and Expert Fees ........................ 11

        2.    SmartStream Need Not Establish Other Damages To Prevail On Its Breach Claim .................................................................. 12

III.  DEFENDANT IS LIABLE FOR TRADE SECRET MISAPPROPRIATION .............. 13

    A.    The Undisputed Facts Show Defendant Misappropriated SmartStream's Trade Secrets Under New York Law ................................. 13

        1.    It is Undisputed That SmartStream's Customer, Pricing, and Financial Data Constitute Proprietary Trade Secrets ............................. 14

        2.    Defendant Disclosed SmartStream's Trade Secrets In Breach of the Agreement .................................................................. 15

        3.    Punitive Damages, Including Attorneys' Fees, Are Warranted Based On Defendant's Egregious Actions ............................. 16

    B.    Defendant is Liable for Trade Secret Misappropriation Under the DTSA As A Matter Of Law ........................................................... 19

        1.    It is Undisputed That SmartStream's Customer, Pricing, and Financial Data Constitute Proprietary Trade Secrets ............................. 20

        2.    It is Undisputed That Defendant Improperly Disclosed SmartStream's Trade Secrets Shortly After SmartStream Reminded Him to Maintain the Confidentiality of SmartStream Information ................................................................. 21

        3.    Punitive Damages Are Appropriate Based On Defendant's Trade Secret Misappropriation .............................................. 21

CONCLUSION ................................................................................................... 21

CERTIFICATE OF SERVICE ............................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AUA Private Equity Partners, LLC v. Soto*,
    2018 WL 1684339 (S.D.N.Y. Apr. 5, 2018)........................................................20

*Capstone Logistics Holdings, Inc. v. Navarrete*,
    2018 WL 6786338 (S.D.N.Y. Oct. 25, 2018) .....................................................20

*Doubleclick Inc. v. Henderson*,
    1997 WL 731413 (S.D.N.Y. Nov. 5, 1997) ........................................................14

*L & L Wings, Inc. v. Marco-Destin, Inc.*,
    676 F. Supp. 2d 179 (S.D.N.Y. 2009)........................................................7, 8, 12

*L & L Wings, Inc. v. Marco-Destin, Inc.*,
    756 F. Supp. 2d 359 (S.D.N.Y. 2010)...............................................................11

*Marsh USA Inc. v. Karasaki*,
    2008 WL 4778239 (S.D.N.Y. Oct. 31, 2008) ....................................................11

*N. Atl. Instruments, Inc. v. Haber*,
    188 F.3d 38 (2d Cir. 1999)................................................................................13

*Paz Sys. v. Dakota Grp. Corp.*,
    514 F. Supp. 2d 402 (E.D.N.Y. 2007) ..............................................................17

*Schanfield v. Sojitz Corp. of Am.*,
    663 F. Supp. 2d 305 (S.D.N.Y. 2009).......................................................... *passim*

*Shamrock Power Sales, LLC v. Scherer*,
    2016 WL 7647597 (S.D.N.Y. Dec. 7, 2016) ................................................17, 18

*Shamrock Power Sales, LLC v. Scherer*,
    2015 WL 5730339 (S.D.N.Y. Sep. 30, 2015)....................................13, 14, 15, 17

**Statutes**

18 U.S.C. § 1836(b)(1) .............................................................................................19

18 U.S.C. § 1839(3) ..................................................................................................20

18 U.S.C. § 1839(5) ..................................................................................................19

18 U.S.C. § 1839(6) ..................................................................................................19

**Other Authorities**

Fed. R. Civ. P. 56(c) ................................................................................................................6

Local Civil Rule 56.1 ..............................................................................................................6

## PRELIMINARY STATEMENT

Plaintiff SmartStream Technologies, Inc. ("SmartStream"), by its undersigned attorneys, respectfully submits this memorandum of law in support of its motion for summary judgment.[1]

SmartStream is a privately held global software and managed services provider whose post-trade processing solutions, together with its unique data management services, creates a real-time and pre-emptive approach to reducing trade failures while also accelerating and automating trade processes. (56.1 ¶ 1). Defendant Philippe Chambadal ("Defendant") is a self-described "senior financial technology executive with over 30 years of experience." (56.1 ¶ 2).

Defendant joined the SmartStream Board of Directors in 2007 and became CEO of SmartStream in 2011, while maintaining his role on the Board of Directors. (56.1 ¶¶ 3-4). As the highest ranking executive of an 800-employee company, Defendant received an annual salary of ███████ (56.1 ¶¶ 6, 19). During his employment, Defendant entered into the July 21, 2015 Employee Agreement Regarding Confidential and Non-Competition and Proprietary Rights (the "Agreement"). (56.1 ¶ 9). Through the Agreement, Defendant promised to return to SmartStream all documents (whether electronic or paper) and equipment furnished to him by SmartStream or produced by him in connection with his SmartStream employment, "when requested by the Company." (56.1 ¶ 15). The Agreement further prohibits Defendant from keeping any copies of such documents or equipment. (*Id.*). The Agreement furthermore requires Defendant to, both during his employment and after his termination, "keep in confidence and trust" all SmartStream "Proprietary Information." (56.1 ¶ 13). The Agreement defines Proprietary Information to include, for example, non-public information of SmartStream such as trade secrets, processes, business and marketing plans and strategies, sales and financial reports and forecasts, supplier lists, alliance

---

[1] SmartStream cites the undisputed facts in this Memorandum by reference to SmartStream's Statement Pursuant to Local Rule 56.1 ("56.1 ¶ __").

partner lists, and client lists. (56.1 ¶ 14).  Through the plain terms of the Agreement, Defendant agreed to pay SmartStream for all costs and expenses, including attorneys' fees and expert fees "in any way connected with" his violation or non-performance of the Agreement.  (56.1 ¶ 101).

The events giving rise to this litigation began on January 5, 2017, when SmartStream notified Defendant that his employment was being terminated.  (56.1 ¶ 42).  SmartStream requested that Defendant return all SmartStream property by January 12, 2017.  (56.1 ¶ 44). SmartStream also explicitly advised Defendant that he must adhere to his obligations set forth in the Agreement, which remained in full force and effect.  (56.1 ¶ 44).

In obvious breach of the Agreement, Defendant blatantly refused to return SmartStream's property, including a company-issued MacBook laptop and Blackberry (collectively, the "SmartStream Devices").  (56.1 ¶ 46).  Defendant in fact held hostage the SmartStream Devices for six weeks (from January 5, 2017 to February 16, 2017) while SmartStream consistently demanded their return.  (56.1 ¶¶ 44-69).  During this time and in further breach of the Agreement, Defendant sent a detailed, highly confidential SmartStream presentation specifying SmartStream's total contract values and bookings' revenue by client to a third party (January 27, 2017); deleted files from the MacBook (February 1-February 13, 2017); backed up confidential SmartStream documents on the MacBook to an external storage device (February 4, 2017); and made an entire mirror image copy of the MacBook (February 10, 2017).  (*Id.*).  Regarding the January 27, 2017 email to a third party, Defendant in fact admits the content he disclosed constitutes SmartStream "trade secrets." (56.1 ¶¶ 36, 52-53). On February 16, 2017, Defendant finally turned over the SmartStream Devices—but retained copies of the MacBook files and SmartStream data —to a third party forensic firm The Computer Forensics Practice, LLC ("CFP").  (56.1 ¶ 69). Defendant's flagrant misconduct and breaches of the Agreement did not stop at this time.

On April 13, 2017, this Court issued a Temporary Restraining Order ("TRO") enjoining Defendant and his agents from accessing, reviewing, disclosing or using in any way any "confidential information, trade secrets, documents or data (and any backups, images or other copies and metadata)" residing on any SmartStream device, belonging to SmartStream, or otherwise possessed by Defendant by virtue of his positions at SmartStream.  (56.1 ¶¶ 72-73).  The TRO furthermore enjoined Defendant and his agents from "[t]ransferring, copying, altering, deleting, or otherwise disturbing the status of" the aforementioned documents and data and required Defendant to turn over all such documents to his attorney.  (56.1 ¶¶ 74-75).  Shortly thereafter, on May 10, 2017, Defendant swore under oath via an affidavit filed with this Court, that he: had not accessed the SmartStream Devices or any copies thereof since February 7, 2017, and he no longer possessed any copies of SmartStream's confidential, trade secret, and/or proprietary information.  (56.1 ¶ 76).

The undisputed facts show Defendant lied under oath, continued to breach the Agreement and violated the TRO, as he possessed copied backup files from the MacBook on an external storage device at the same time he swore he no longer possessed any copies of SmartStream's confidential information.  (56.1 ¶¶ 60-61, 93-94).  Defendant furthermore had a **full mirror image** of the MacBook taken on February 10, 2017.  (56.1 ¶ 66).  In blatant violation of this Court's TRO and in breach of the Agreement, on May 19, 2017 and June 29, 2017, Defendant emailed at least two clearly marked SmartStream documents to AxiomSL, an unrelated company for which Defendant was providing consulting services.  (56.1 ¶¶ 77-80).  AxiomSL expressly stated, "It's clear that AxiomSL can learn much from your experience running SmartStream" and paid Defendant ████ in compensation for performing two months of consulting services. (56.1 ¶ 78).

Defendant's wanton misconduct, disregard of Court orders, and breaches of the Agreement continued. In an affidavit submitted to this Court on July 28, 2017, Defendant again lied under oath by swearing that he had not created any back-ups of the MacBook. (56.1 ¶ 83). Defendant lied further to the Court by stating he had not retained any SmartStream documents, and had not disclosed any SmartStream confidential or proprietary information to anyone other than his attorney. (*Id.*). In ongoing breach of the Agreement, Defendant indisputably retained possession of SmartStream's documents by virtue of his possession of the MacBook backup files and other SmartStream documents he retained on his family's iMac and in his personal email accounts. (*Id.*). Likewise, Defendant undeniably disclosed SmartStream confidential and proprietary information through the previously addressed January 27, 2017 email to an outsider. (*Id.*).

This Court issued a Consent Order for Injunction on August 21, 2017 (the "Injunction Order"), requiring Defendant to timely return to SmartStream all remaining proprietary data and mirror images in his possession, and to timely deliver to CFP all of his personal computers, hard drives, and other electronic devices and account information to allow CFP to search for SmartStream information. (56.1 ¶¶ 84-87). Defendant wholly failed to comply with the Injunction Order. (56.1 ¶¶ 88-89, 93-99). For example, Defendant did not deliver **any** devices or data to CFP or SmartStream within the timeframe mandated by this Court. (56.1 ¶¶ 88-89). Only after SmartStream sought Sanctions for Defendant's contempt and this Court held a contempt hearing, did Defendant finally deliver to CFP an external storage device on October 27, 2017, his family's iMac on November 9, 2017, and account information for two of his personal email accounts. (56.1 ¶¶ 90-92). As SmartStream feared, CFP's analysis revealed the MacBook back-up files Defendant had copied on February 4, 2017, and a litany of SmartStream's proprietary documents and data. (56.1 ¶¶ 93-99). The undisputed facts of this matter show:

- Defendant brazenly lied to this Court about his ongoing possession, misappropriation, copying, disclosure, and use of SmartStream documents in two separate affidavits.  (56.1 ¶¶ 76, 83, 93-99).

- Defendant blatantly violated **two** separate court orders, by possessing, refusing to turn over, copying, using, and disclosing SmartStream's property, documents, and data. (56.1 ¶¶ 73-75, 77-80, 84-89).

- Defendant breached the Agreement—a fact which he admits—by withholding a company-issued MacBook full of proprietary information for six weeks after SmartStream demanded its return.  (56.1 ¶¶ 9, 44, 47, 69).  During this time, Defendant copied, transferred, and deleted SmartStream confidential information from the MacBook. (56.1 ¶¶ 44-68).

- Defendant breached the Agreement by withholding SmartStream's property, including confidential customer and financial information on his family's iMac computer and within his personal email accounts, for approximately ten months after SmartStream demanded return of all such property. (56.1 ¶¶ 91-92, 97-99).

- Defendant further breached the Agreement by withholding additional SmartStream property in the form of MacBook backup files and confidential and proprietary information on an external storage device, for approximately ten months after SmartStream demanded return of all such property. (56.1 ¶¶ 93-96).

- Defendant misappropriated SmartStream's trade secrets by emailing to an outsider a SmartStream presentation containing highly confidential information, including customer contract values, revenues and bookings by client, and financial forecasts. (56.1 ¶¶ 52-53). Defendant sent this email just three weeks after SmartStream provided notice to Defendant of his termination of employment, demanded return of all property, and reminded him that he must maintain the confidentiality of all SmartStream information. (56.1 ¶¶ 42-44, 52).

Defendant's undisputed and egregious violations of the Agreement show Defendant is liable for breach of contract as a matter of law.  Based on the unambiguous damages provision of the Agreement, SmartStream is entitled to recover its attorneys' costs and fees and expert fees as a matter of law.  In addition, Defendant's undisputed distribution of SmartStream's trade secrets to an unrelated third party show Defendant is liable for misappropriation of trade secrets under both New York law and the Defend Trade Secrets Act as a matter of law.  SmartStream therefore respectfully seeks an order granting it summary judgment on each of its three claims against Defendant.  Based on Defendant's gross and wanton conduct—including Defendant's blatant and

frequent lies under oath and repeated violations of this Court's orders—SmartStream respectfully requests that the Court assess punitive damages against Defendant.

## STATEMENT OF FACTS

Defendant respectfully refers the Court to the accompanying Local Civil Rule 56.1 Statement of Undisputed Facts.

## LEGAL ARGUMENT

I.     **STANDARD OF REVIEW**.

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c).  In addressing a motion for summary judgment, the court must view the evidence "in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in its favor."  *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 328 (S.D.N.Y. 2009) (citation omitted).  The party moving for summary judgment bears the initial burden of demonstrating the absence of a disputed issue of material fact.  *Id.*  The burden then shifts to the non-moving party to establish "specific facts showing that there is a genuine issue for trial."  *Id.* (quoting Fed. R. Civ. P. 56(e)).

The party opposing summary judgment cannot rely on "conclusory allegations or unsubstantiated speculation" in order to defeat summary judgment.  *Id.*  (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).  Moreover, a nonmoving party's establishment of a disputed fact cannot defeat summary judgment unless it is "material in light of the substantive law that governs the case."  *Id.*  ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Finally, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material

facts." *Id.* (quoting *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). In other words, the nonmoving party must establish sufficient evidence such that "a reasonable jury could return a verdict for the nonmovant." *Id.*

## II.   DEFENDANT IS LIABLE FOR BREACH OF CONTRACT AS A MATTER OF LAW.

To succeed on a claim for breach of contract under New York law, the plaintiff must demonstrate (1) the existence of an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages. *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 185 (S.D.N.Y. 2009) (granting summary judgment to plaintiff on its breach of contract claim).

Here, Defendant is liable for breaching the Agreement as a matter of law. Defendant admits he is bound by the Agreement. (56.1 ¶¶ 9, 11-12). Defendant admits SmartStream performed under the Agreement, i.e. that it provided him with employment and access to SmartStream's confidential information. (56.1 ¶¶ 4, 6, 16). Defendant further admits that he breached Section 3 of the Agreement. (56.1 ¶¶ 9, 15, 44, 46, 48, 52-53, 60-61, 66). The language of the Agreement specifies damages, including that Defendant is liable for attorneys' fees and costs and expert fees arising from his violation or nonperformance of the Agreement. (56.1 ¶¶ 100-101).

### A.   It Is Undisputed That Defendant Entered Into The Agreement and SmartStream Performed Under the Agreement.

SmartStream satisfies the first two elements in its breach of contract claim as a matter of law. It is undisputed that Defendant is bound by the Agreement and that SmartStream performed its obligations under the Agreement.

First, a plaintiff may establish the existence of a contract as a matter of law when it shows an agreement validly executed by both parties. *L & L Wings, Inc.*, 676 F. Supp. 2d at 185 (ruling

a contract existed because the agreement was validly executed by the parties and the agreement contained a provision stating "This Agreement shall be binding upon the parties and their agents."). Here, Defendant expressly admits he entered into the Agreement.  (56.1 ¶ 9).  Furthermore, Defendant expressly acknowledged in the Agreement, "This Agreement will be binding upon me and my heirs, executors, administrators, and legal representatives . . . ." (56.1 ¶ 12).

Second, a plaintiff establishes adequate performance of a contract by simply showing it performed its written obligations under the Agreement.  *L & L Wings, Inc.*, 676 F. Supp. 2d at 187. Here, the Agreement states SmartStream will employ Defendant on an at-will basis, and provide Defendant with confidential information belonging to SmartStream during his employment.  (56.1 ¶ 9).  Defendant acknowledged in the Agreement: "I understand that during the course of my employment with SmartStream Technologies, Inc. ('Company'), I will have access to and may develop confidential information belonging to the Company." (56.1 ¶ 10).  Defendant further acknowledged "This Agreement is entered into by me voluntarily and for good and valuable consideration (including my employment with the Company) the adequacy of which consideration I hereby acknowledge."  (56.1 ¶ 11).  It is undisputed that SmartStream employed Defendant as its CEO and gave Defendant access to SmartStream's confidential information.  (56.1 ¶¶ 4, 6, 16). SmartStream performed its obligations under the Agreement.

As Defendant admits he entered into the Agreement and SmartStream adequately performed under the Agreement, SmartStream has satisfactorily established the first two elements of its breach of contract claim as a matter of law.

### B.     Defendant Admits He Breached The Agreement.

The undisputed facts show Defendant breached Section 3 of the Agreement as a matter of law.

When the language of a contract is "unambiguous, and reasonable parties could not differ as to its meaning" granting summary judgment on a breach of contract claim is proper. *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 345 (S.D.N.Y. 2009). The "breach" element is established as a matter of law when a defendant admits he engaged in conduct that violates the unambiguous terms of a contract. *Id*. at 345 (ruling the agreement's requirements that an employee maintain the confidentiality of the employer's information and return all information at the end of his employment were unambiguous, and therefore defendant's retention of employer's confidential information after his employment ended breached the agreement as a matter of law).

Here, the Agreement unambiguously states "[a]ll documents, records, apparatus, equipment and other intangible or tangible property (in all forms, including, digital, electronic, audio, visual, and paper based forms), whether or not pertaining to Proprietary Information, which are or have been furnished to me by the Company or are or have been produced by me in connection with or in furtherance of my employment with the Company are and will remain the sole property of the Company." (56.1 ¶ 15). The Agreement furthermore expressly requires that Defendant "return to the Company all such property as and when requested by the Company and keep no copies." (56.1 ¶ 15). **Defendant expressly admits that he retained SmartStream's property after SmartStream demanded its return, in violation of the Agreement.** (56.1 ¶¶ 44-46):

> **11.**   Admit that SmartStream requested return of its property by January 12, 2017 on or around January 5, 2017.
>
> **Response:**   Admit.
>
> **12.**   Admit that you failed to return all of SmartStream's property by January 12, 2017.
>
> **Response:**   Admit.

Indeed, SmartStream and legal counsel to SmartStream consistently and frequently demanded return of SmartStream's property beginning in early January 2017, even filing a replevin action to obtain the stolen property in February 2017.  (56.1 ¶¶ 44-47, 50-51, 55-56, 58-59, 64-65, 68).   Defendant finally delivered some SmartStream property (the SmartStream Devices) to CFP on February 16, 2017.  (56.1 ¶ 69). During his **six weeks** of unlawfully retaining the SmartStream Devices, Defendant copied, deleted, and transferred SmartStream's proprietary and confidential information. (56.1 ¶¶ 44-68).  Even without regard to the proprietary content contained on the MacBook and Defendant's improper access and use of the MacBook, Defendant violated the Agreement through his prolonged retention of the SmartStream Devices and the wealth of SmartStream documents contained thereon.  (56.1 ¶ 15).

As to SmartStream property outside of the SmartStream Devices, it is further undisputed that Defendant retained a storage device containing TimeMachine back-ups of the MacBook (including a litany of SmartStream proprietary and trade secret information) until October 27, 2017.  (56.1 ¶¶ 91, 93-96).  Defendant also retained SmartStream documents on his family's iMac desktop computer (including a customer contract with pricing information) until November 9, 2017 and SmartStream documents within his personal email accounts.  (56.1 ¶¶ 97-99).  It is undisputed that Defendant's retention of this back-up data and other SmartStream documents not only violated the Agreement, but also shows Defendant lied to the Court and violated the Court's TRO and Injunction Order.  (56.1 ¶¶ 13, 15, 73-76, 83-89, 93-99).

Defendant's improper and prolonged retention of SmartStream's hardware, documents, and proprietary data breaches the Agreement as a matter of law.[2]

---

[2] Even assuming, *arguendo*, that Defendant's retention of SmartStream property did not breach Section 3 of the Agreement, Defendant independently breached Section 2 of the Agreement by failing to "keep in trust and confidence" SmartStream's Proprietary Information. (56.1 ¶ 13). The undisputed evidence shows Defendant not only retained SmartStream's property and documents, but he also affirmatively emailed three SmartStream documents to unrelated

C. **SmartStream Has Been Damaged By Defendant's Breaches**.

SmartStream has been damaged by Defendant's breach of the Agreement as matter of law, as expressly addressed in the Agreement at Section 9.  (56.1 ¶¶ 100-101).

1. **SmartStream Is Entitled To Attorneys' and Expert Fees**.

SmartStream is entitled to its attorneys' fees and expert fees as a matter of law based on the unambiguous language of the damages provision in the Agreement.  (56.1 ¶¶ 100-101).

New York courts enforce attorneys' fees as damages in a breach of contract action as long as the contractual language clearly states the party is entitled to such fees in the event the other breaches.  *L & L Wings, Inc. v. Marco-Destin, Inc.*, 756 F. Supp. 2d 359, 368 (S.D.N.Y. 2010) (granting attorneys' fees as a matter of law where "the provision clearly states that Licensor is entitled to reasonable attorneys' fees arising from breach of the Agreement"); *see also Marsh USA Inc. v. Karasaki*, 2008 WL 4778239, at *21 (S.D.N.Y. Oct. 31, 2008) (granting attorneys' fees to defendant employer in breach of contract action against former executive because the contract specified that, if the executive breached, the company would be entitled to recover the attorneys' fees incurred in seeking to enforce the agreement).

Here, Defendant expressly agreed to pay SmartStream for all costs and expenses, **including attorneys' fees and expert fees,** "in any way connected with" his violation or non-performance of the Agreement.  (56.1 ¶ 101: "I agree to indemnify and hold harmless the Company from costs and expenses (including attorneys' and expert fees) damages, liabilities or obligations from any actions, suits, proceedings, claims, demands arising from, growing out of or in any way connected with the violation or non-performance by me of this Agreement.").  Due to Defendant's willful

---

third parties after SmartStream explicitly asked him to refrain from doing so.  (56.1 ¶¶ 44, 52-53, 77, 79).  It is undisputed that at least one of those documents contains highly proprietary trade secret information. (56.1 ¶¶ 36, 53). A full discussion of Defendant's misappropriation of SmartStream's trade secrets is addressed *infra* III(A).

violations of the Agreement, SmartStream has had to incur $ 339,601 in attorneys' fees and costs, to date.  (56.1 ¶ 103). Expert fees incurred by SmartStream and arising from Defendant's violations of the Agreement amount to $ 12,135 to date.  (56.1 ¶ 105).

By the plain language of the Agreement, SmartStream is entitled to attorneys' fees and costs and expert fees.

### 2.    SmartStream Need Not Establish Other Damages To Prevail On Its Breach Claim.

Where a contract specifies that a party's breach will cause the other to suffer irreparable harm and damages which would be difficult to ascertain—as is often the case in confidentiality or trademark agreements—a party satisfies the "damages" element of its breach claim through reference to such language.  *L & L Wings, Inc.*, 676 F. Supp. 2d at 187 (granting summary judgment to the plaintiff on its breach of contract claim).  In *L & L Wings, Inc.*, the parties' agreement contained a liquidated damages clause and further stated "Licensee specifically acknowledges that the use of the Mark . . . will cause Licensor to suffer irreparable harm, damages for which would be extremely difficult to ascertain."  *Id.* Noting that the plaintiff must generally show damages resulted from the defendant's breach for its breach of contract claim, the court cited this damages provision and granted summary judgment to the plaintiff.  *Id.* (reasoning "[t]o the extent that Defendants dispute the amount of liquidated damages that should be assessed under the Agreement, Defendants may raise such issues at a later proceeding . . . .").

Here, Defendant expressly acknowledged in the Agreement:

> [I]t may be difficult to measure any damages of the Company which might result from any breach by me of the obligations set forth in this Agreement, and that, money damages may be an inadequate remedy for any such breach. Accordingly, I agree that if I breach, or propose to breach, any portion of this Agreement, the Company shall be entitled, in addition to all other remedies that it may have, to a preliminary or permanent injunction or other appropriate

> equitable relief to restrain any such breach or proposed breach without showing or proving any actual damage to the Company."

(56.1 ¶ 100).  Accordingly, per *L & L Wings, Inc.*, SmartStream has established that it is entitled to attorneys' and expert fees as a matter of law, and the Agreement expressly states Defendant's violation of the Agreement will otherwise result in damages "difficult to measure." (56.1 ¶¶ 100-101).  SmartStream has satisfactorily established the damages element of its breach claim as a matter of law. The undisputed facts show SmartStream and Defendant entered into a valid agreement under which SmartStream performed its obligations.  Defendant admits he breached the Agreement, and the Agreement unambiguously entitles SmartStream to recover its attorneys' and expert fees incurred in connection with Defendant's breach. Defendant is liable for breach of the Agreement as a matter of law.

## III.    DEFENDANT IS LIABLE FOR TRADE SECRET MISAPPROPRIATION.

The standard for establishing misappropriation of trade secrets under New York and federal law is similar. Under either theory of recovery, Defendant has misappropriated SmartStream's trade secret information as a matter of law.  Discussed in detail below, SmartStream is entitled to punitive damages against Defendant based on his gross and wanton conduct and complete disregard for this Court's orders.

### A.    The Undisputed Facts Show Defendant Misappropriated SmartStream's Trade Secrets Under New York Law.

To succeed on a claim for the misappropriation of trade secrets under New York law, a plaintiff must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means.  *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir. 1999).

Generally speaking, a trade secret is "any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain

an advantage over competitors who do not know or use it." *Shamrock Power Sales, LLC v. Scherer*, 2015 WL 5730339, at \*25 (S.D.N.Y. Sep. 30, 2015) (quoting *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999).  In determining whether information constitutes a trade secret under New York law, courts consider "1) the extent to which the information is known outside of the business; 2) the extent to which it is known by employees and other involved in the business; 3) the extent of measures taken by the business to guard the secrecy of the information; 4) the value of the information to the business and its competitors; 5) the amount of effort or money expended by the business in developing the information; 6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Doubleclick Inc. v. Henderson*, 1997 WL 731413, at \*4 (S.D.N.Y. Nov. 5, 1997) (quoting Restatement of Torts § 757) (noting that highly sensitive information about the company, including information regarding revenue projections, plans for future projects, pricing and product strategies, databases of information collected about clients, and financial arrangements with clients constitute trade secrets under New York law).  The most important consideration is whether the information was kept secret. *Shamrock Power Sales, LLC*, 2015 WL 5730339, at \*25 (granting summary judgment to plaintiff on its trade secret misappropriation claim).

### 1. It is Undisputed That SmartStream's Customer, Pricing, and Financial Data Constitute Proprietary Trade Secrets.

Under New York law, and indeed by Defendant's own admission, SmartStream possessed a variety of trade secrets.  (56.1 ¶ 36).

For example, it is undisputed that SmartStream aggregated and Defendant accessed financial arrangements SmartStream maintained by client or customer including service fees, software fees, contract values, actual and expected revenue by customer, revenue over time by client, and information concerning pipelines for new deals.  (56.1 ¶¶ 25-36).  Defendant expressly

admits such information is highly confidential and valuable due to the fact such information is not widely known.  (56.1 ¶¶ 35-36).  Indeed, SmartStream maintained the secrecy of such information by requiring that all employees with access to such information sign confidentiality agreements.  (56.1 ¶ 39).  SmartStream furthermore only shares such information on a need-to-know basis, marks documents containing such information as confidential, and limits the distribution of such materials.  (56.1 ¶¶ 37-41).  Furthermore, SmartStream requires all SmartStream-issued devices containing confidential information to be password-protected.  (56.1 ¶ 40).  SmartStream requires employees possessing such devices to regularly change their passwords.  (*Id.*)  In addition, SmartStream maintains written policies governing employee use of SmartStream's electronic information, and regularly employs and requires employees to use a secure internal file share site in order to securely share documents containing SmartStream confidential information.  (*Id.*)

SmartStream held trade secrets as a matter of law, satisfying the first element of its New York misappropriation claim.

### 2. Defendant Disclosed SmartStream's Trade Secrets In Breach of the Agreement.

Sending a company's trade secret to an unrelated third party while bound by a confidentiality agreement constitutes the quintessential "misappropriation" giving rise to liability.  *See, e.g.*, *Schanfield*, 663 F. Supp. 2d at 345 (*sua suponte* granting summary judgment to employer on its trade secret misappropriation claim because, while bound by a confidentiality agreement, the former employee sent confidential risk-assessment materials to third parties).

Here, it is undisputed that Defendant emailed a SmartStream presentation labeled "STL Corporate Q4 2016.pptx" to an outside individual on January 27, 2017.[3]  (56.1 ¶¶ 52-53).  It is

---

[3]Of note, Defendant sent this document just weeks after SmartStream provided him with notice of his termination of employment and demanded return of all SmartStream property and documents.  (56.1 ¶¶ 42-44, 52).  Further, just

further undisputed that the recipient is a third party unaffiliated with SmartStream.  (56.1 ¶ 52).

The presentation sent by Defendant contains detailed, highly confidential slides disclosing

SmartStream's total contract values identified by customer and client, new SmartStream bookings

identified by client and revenue, and financial forecasts.  (56.1 ¶ 53).  Such information is

extremely valuable to SmartStream and detrimental to SmartStream in the hands of a competitor.

(*Id.*)   Finally, Defendant admits he was bound by the Agreement and its unambiguous

confidentiality provisions when he sent the confidential presentation.  (56.1 ¶¶ 9-11, 13-17).  The

Agreement expressly requires Defendant to maintain the confidentiality of, and to not disclose,

SmartStream's "Proprietary Information" (including sales and financial information, along with

customer lists).   (56.1 ¶¶ 13-14).   Such obligations endure after Defendant's termination of

employment. (56.1 ¶ 13).

Defendant's act of sending this trade secret information to a non-SmartStream

individual—just days after SmartStream reminded Defendant of his confidentiality obligations

under the Agreement and while Defendant was unlawfully holding hostage his SmartStream

MacBook and other SmartStream property—constitutes misappropriation of SmartStream's trade

secrets as a matter of law.

### 3. Punitive Damages, Including Attorneys' Fees, Are Warranted Based On Defendant's Egregious Actions.

Damages for misappropriation of a trade secret may be measured by either plaintiff's losses

or the profits unjustly gained by defendant. *Schanfield*, 663 F. Supp. 2d at 350.  However, a

plaintiff "need not demonstrate pecuniary damage to prevail on a claim for misappropriation of

trade secrets."   *Id.* at 349 (granting summary judgment to plaintiff on its trade secret

---

days prior, SmartStream had followed up with Defendant, again demanding his immediate return of all SmartStream property.  (56.1 ¶¶ 50-52).

misappropriation claim because "[t]he issue of remedy will go to trial, but not the issue of [defendant]'s culpability. As to that, [plaintiff] is plainly entitled to summary judgment.")[4]

Punitive damages[5] are recoverable in a trade secret misappropriation claim when the defendant's conduct is "gross and wanton." *Paz Sys. v. Dakota Grp. Corp.*, 514 F. Supp. 2d 402, 409 (E.D.N.Y. 2007) (awarding punitive damages because defendant was calculated in his misappropriation and attempted to hide his acts, including by destroying evidence). Of particular relevance, a defendant's theft and copying of his former employer's proprietary data using his company-issued devices, coupled with the defendant's "repeated disregard of Court orders," is "sufficiently gross and wanton to permit recovery of punitive damages." *Shamrock Power, LLC v. Scherer*, 2016 WL 7647597, at *15 (S.D.N.Y. Dec. 7, 2016) (*adopted in full by Shamrock Power, LLC v. Scherer*, 2017 WL 57855 (S.D.N.Y. Jan. 4, 2017)) (awarding $ 223, 951.01 in punitive damages to employer in trade secret misappropriation action against former employee).

Here, punitive damages are warranted. Strikingly similar to *Shamrock Power, LLC*, Defendant held hostage a company-issued laptop for six weeks while SmartStream consistently demanded its return. (56.1 ¶¶ 44-69). During this time, Defendant deleted files from the MacBook; disclosed a highly confidential presentation specifying SmartStream's total contract values and bookings' revenue by client to a third party; backed up SmartStream documents to an external storage device; and made an entire mirror image copy of the MacBook. (*Id.*).

---

[4]SmartStream does not presently seek summary judgment as to the financial damages suffered due to Defendant's misappropriation. Rather, SmartStream respectfully seeks summary judgment as to Defendant's liability for trade secret misappropriation and punitive damages.

[5]Under New York law, attorneys' fees may be considered on the issue of punitive damages. *Shamrock Power, LLC v. Scherer*, 2016 WL 7647597, at *15 (S.D.N.Y. Dec. 7, 2016) (*adopted by Shamrock Power, LLC v. Scherer*, 2017 WL 57855 (S.D.N.Y. Jan. 4, 2017)). Thus, in the event this Court determines attorneys' fees are not proper under SmartStream's breach of contract claim, SmartStream respectfully and independently seeks recovery of its attorneys' fees as a component of punitive damages.

Defendant's utter disregard for this Court's orders and the rule of law is wanton and extraordinary.  On April 13, 2017, this Court enjoined Defendant from accessing or disclosing any documents or data that Defendant possessed through his positions at SmartStream, and further required Defendant to turn over any such documents or data to his counsel. (56.1 ¶¶ 72-75). One month later, Defendant swore to this Court that he had not accessed SmartStream documents since February 7, 2017 and he no longer possessed any SmartStream confidential information.  (56.1 ¶ 76).  Not so.  Defendant had a full mirror image taken of the MacBook on February 10, 2017. (56.1 ¶ 66).  Defendant accessed and disclosed SmartStream documents and data by emailing the same to an entity to which he was pitching his personal consulting services on May 19 and June 29, 2017.  (56.1 ¶¶ 77-80).  Furthermore, Defendant had copied SmartStream's confidential information from his MacBook TimeMachine back up program to an external storage device on February 4, 2017, and **Defendant retained such device until October 27, 2017**.  (56.1 ¶¶ 60-61, 93-95).

In an affidavit signed on July 22, 2017, Defendant **again** lied to this Court by swearing that he had not created any back-ups of the MacBook; had not retained any SmartStream documents; and had not disclosed any SmartStream confidential information to anyone other than his attorney. (56.1 ¶ 83).  It is undisputed that Defendant retained possession of the SmartStream MacBook backup files at this time, and that Defendant emailed SmartStream proprietary customer fee, contract value, and revenue information to an outsider on January 27, 2017.  (*Id.*)

Defendant further wholly disregarded an Injunction Order issued by this Court on August 21, 2017.  (56.1 ¶¶ 84-87).  For example, Defendant did not deliver to SmartStream or CFP any proprietary data or mirror images or his personal devices within the timeframe mandated by this Court. (56.1 ¶ 88-89).  Only after SmartStream sought sanctions for Defendant's contempt did

Defendant finally deliver to CFP a storage device on October 27, 2017 and his family's iMac desktop on November 9, 2017, along with account information for his personal email accounts. (56.1 ¶¶ 90-92).  As discussed *supra*, the storage device, iMac, and personal email accounts contained the SmartStream MacBook backups and a litany of SmartStream's proprietary documents and data.  (56.1 ¶¶ 93-99).

SmartStream incurred extensive attorneys' fees and costs chasing down Defendant and attempting to secure the return of its property. Defendant's gross and wanton conduct is shown by his flagrant theft and retention of SmartStream's property (which persisted for approximately ten months) in breach of the Agreement; his frequent and blatant lies to the Court and multiple violations of two different Court orders; and his egregious distribution of SmartStream's documents to a company for which he was performing consulting services and to an unrelated third party.  Punitive damages are proper as a matter of law.

**B.      Defendant is Liable for Trade Secret Misappropriation Under the DTSA As A Matter Of Law**.

The Defend Trade Secrets Act of 2016 ("DTSA") creates a private cause of action in favor of the "owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).[6] A trade secret under the DTSA includes all forms and types of financial, business, scientific, technical, economic, or engineering information, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if: (A) the owner thereof has taken reasonable measures to keep such information secret;

---

[6]"Misappropriation" is defined within DTSA as an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty. 18 U.S.C. § 1839(5). "Improper means" includes breach of duty to maintain secrecy. 18 U.S.C. § 1839(6).

and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. 18 U.S.C. § 1839(3).

The DTSA "contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *AUA Private Equity Partners, LLC v. Soto*, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018) (quotation omitted) (ruling that the defendant uploading a company's trade secrets from her work laptop to a personal cloud-based storage account, in violation of a confidentiality agreement, alleged acquisition of a trade secret by improper means, constituting a claim for DTSA misappropriation).   For example, the following actions constitute improper use of confidential information sufficient to demonstrate a DTSA misappropriation claim: an individual's forwarding a company's confidential pricing information; wrongfully accessing company revenue, pay, and financial information; copying and using a company's confidential contract for his own benefit; using a USB after his employment ended to access confidential customer information; and transferring proprietary contact lists.   *Capstone Logistics Holdings, Inc. v. Navarrete*, 2018 WL 6786338, at *31-32 (S.D.N.Y. Oct. 25, 2018).

Here, the undisputed facts show Defendant misappropriated trade secrets in violation of the DTSA.

1.      **It is Undisputed That SmartStream's Customer, Pricing, and Financial Data Constitute Proprietary Trade Secrets**.

As set forth fully *supra* at III(A)(1), Defendant readily admits that SmartStream's financial arrangements with clients and SmartStream's data on pipelines for new deals are trade secrets that derive independent economic value by virtue of not being generally known, and for which SmartStream takes measures to keep secret.

      **2.**      **It is Undisputed That Defendant Improperly Disclosed SmartStream's Trade Secrets Shortly After SmartStream Reminded Him to Maintain the Confidentiality of SmartStream Information**.

In addition, as discussed *supra* at III(A)(2), it is undisputed that Defendant disclosed a highly proprietary SmartStream presentation containing customer pricing and contract value information to an outsider just three weeks after SmartStream provided him notice of his termination of employment and expressly reminded him to return all SmartStream property and to maintain the confidentiality of all SmartStream confidential information.  (56.1 ¶¶ 52-53).

      **3.**      **Punitive Damages Are Appropriate Based On Defendant's Trade Secret Misappropriation**.

As discussed in detail *supra* III(A)(3), Defendant's egregious and unlawful refusal to turn over SmartStream's property and documents, coupled with his blatant misappropriation of the same and violations of this Court's orders, render punitive damages appropriate.

Defendant is liable for trade secret misappropriation as a matter of law.

## CONCLUSION

For the above reasons, SmartStream respectfully requests that summary judgment be entered in its favor on all counts set forth in the Complaint.  SmartStream respectfully requests that the Court enter an award its favor and against Defendant as follows:

- For recovery of attorneys' costs and fees: $ 339,601;

- For recovery of expert fees: $ 12,135; and

- For recovery of punitive damages in an amount to be determined by the Court.

Respectfully submitted,

*/s/ Meghan E. Hill*
Meghan E. Hill (MH1523)
Jill S. Kirila (*pro hac vice*)
Kristine Woliver (*pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
30 Rockefeller Plaza, 23rd Floor
New York, New York 10112
Telephone:  +1.212 872 9800
Facsimile:  +1.212 872 9815
*meghan.hill@squirepb.com*
*jill.kirila@squirepb.com*
*kristine.woliver@squirepb.com*

*COUNSEL FOR PLAINTIFF*
*SMARTSTREAM TECHNOLOGIES, INC.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 15, 2019 I electronically filed the foregoing with the United States District Court for the Southern District of New York, which will notify the following parties:

Eric Robert Stern
Michael Mui
Sack & Sack, LLP
70 East 55th Street, 10th Fl.
New York, NY 10022
*ericstern110@gmail.com*
*mmui@sackandsack.com*

*Attorneys for Defendant*

*/s/ Meghan E. Hill*
One of the attorneys for Plaintiff
