UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SMARTSTREAM TECHNOLOGIES, INC.,

Plaintiff,

v.

PHILIPPE CHAMBADAL,

Defendant.

Case No. 1:17-cv-02459

Hon. Vernon S. Broderick

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**SACK & SACK, LLP**

Attorneys for Defendant

70 East 55th Street, 10th Floor
New York, New York 10022-2050
(212) 702-9000

**TABLE OF CONTENTS**

STATEMENT OF FACTS ..... 1
ARGUMENT ..... 1
I. SUMMARY JUDGMENT STANDARD ..... 1
II. CHAMABDAL RETURNED ALL DEVICES AND DID NOT BREACH HIS AGREEMENT WITH SMARTSTREAM ..... 2
III. SMARTSTREAM IS NOT ENTITLED TO SUMMARY JUDGMENT ON ITS MISAPPROPRIATION CLAIMS ..... 3
A. Misappropriation Under New York Law ..... 3
B. Trade Secret Misappropriation Under The DTSA ..... 5
IV. DAMAGES ARE NOT WARRANTED ..... 7
CONCLUSION ..... 10

# TABLE OF AUTHORITIES

## CASES

*A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82 (2d Cir. 1991) ........ 7

*Aquinas v. Federal Express Corp.*, 940 F.Supp. 73 (S.D.N.Y. 1996) ........ 1

*AUA Private Equity Partners, LLC v. Soto*, No. 1:17-cv-8035-GHW, 2018 U.S. Dist. LEXIS 58356 (S.D.N.Y. Apr. 5, 2018) ........ 7

*Big Vision Private Ltd. v. E.I. du Pont de Nemours & Co.*, 610 F. App'x 69 (2d Cir. 2015) ........ 5

*Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224 (S.D.N.Y. 2014) ........ 5

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-cv-2177 (SI), 2017 WL 1436044 (N.D. Cal. Apr. 24, 2017). ........ 7

*Free Country Ltd v. Drennen*, No. 16 CV 8746 (JSR), 2016 WL 7635516 (S.D.N.Y. Dec. 30, 2016) ........ 6

*In re Cross Media Mktg. Corp.*, No. 06 CIV. 4228 (MBM), 2006 WL 2337177, (S.D.N.Y. Aug. 11, 2006). ........ 8

*In re Document Tech. Litig.*, 275 F. Supp. 3d 454 (S.D.N.Y. 2017) ........ 4

*Lehman v. Dow Jones & Co.*, 783 F.2d 285 (2d Cir. 1986) ........ 4

*Loughry v. Lincoln First Bank,* 67 N.Y.2d 369, 378, 502 N.Y.S.2d 965, 494 N.E.2d 70 (1986) ... 8

*N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38 (2d Cir. 1999). ........ 3, 6

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*,182 F.3d 157 (2nd Cir. 1999) ........ 1

*Perry v. Int'l Transport Workers' Federation*, 750 F.Supp. 1189 (S.D. N.Y. 1990) ........ 1

*Robin Bay Assocs., LLC v. Merrill Lynch & Co.,* No. 07-CV-376, 2008 WL 2275902 (S.D.N.Y. June 3, 2008) ........ 8

*ScentSational Techs., LLC v. PepsiCo, Inc.*, No. 13-CV-8645 (KMK), 2017 WL 4403308, (S.D.N.Y. Oct. 2, 2017) ........ 7

*Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05-CV-9292, 2008 WL 463884 (S.D.N.Y. Feb. 20, 2008) ........ 5

*Sobel v. Yeshiva* University, 477 F.Supp. 1161 (S.D.N.Y. 1979) ........ 1

*Sorias v. Nat'l Cellular USA, Inc.*, 124 F. Supp. 3d 244 (E.D.N.Y. 2015) ....................................4

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Group, Inc.*, 15CV211LGSRLE, 2016 WL 5338550 (S.D.N.Y. Sept. 23, 2016) ....................................6

*Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, (S.D.N.Y. 2005) ....................................8

**STATUTES**

18 U.S.C. § 1839(3)....................................6

18 U.S.C. § 1839(5)....................................6

18 U.S.C. § 1839(6)....................................7

18 U.S.C. § 1839(3)(A)-(B)). ....................................6

On behalf of the Defendant, Philippe Chambadal ("*Defendant*" or "*Chambadal*"), we submit this Memorandum of Law in Opposition to the Plaintiff, SmartStream Technologies, Inc.'s ("*Plaintiff*" or "*SmartStream*") Motion for Summary Judgment pursuant to Fed. R. Civ. P. Rule 56.

**STATEMENT OF FACTS**

Defendant respectfully refers this Court to Defendant's Response to Plaintiff's Rule 56.1 Statement of Undisputed Facts, the Declaration of Jonathan Sack (together with the accompanying exhibits), and the Affidavit of Philippe Chambadal in Opposition to Plaintiff's Motion for Summary Judgment.

**ARGUMENT**

**I. SUMMARY JUDGMENT STANDARD**

Summary judgment is a drastic device that should only be used in extremely rare instances. *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*,182 F.3d 157, 160 (2d Cir. 1999) (citation omitted); *Sobel v. Yeshiva* University, 477 F.Supp. 1161, 1166 (S.D.N.Y. 1979), decision supplemented by 85 F.R.D. 332 (S.D. N.Y. 1980). Summary judgment should not be granted unless the moving party has established the right to judgment with such clarity as to leave no room for doubt. *Perry v. Int'l Transport Workers' Federation*, 750 F.Supp. 1189, 1193 (S.D. N.Y. 1990). In considering such a motion, a court must view all evidence in the light most favorable to the non-movant and resolve all ambiguities and draw all reasonable inferences in its favor. *Aquinas v. Federal Express Corp.*, 940 F.Supp. 73, 76 (S.D.N.Y. 1996).

## II. CHAMABDAL RETURNED ALL DEVICES AND DID NOT BREACH HIS AGREEMENT WITH SMARTSTREAM

To prevail on their breach of contract claim, SmartStream must prove (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004).

There exist genuine issues of material fact with respect to Chambadal's alleged breach of the Employee Agreement Regarding Confidentiality and Non-Competition and Proprietary Rights (the "*Agreement*").

Chambadal timely returned the SmartStream Devices (i.e., the MacBook and Blackberry) and Chambadal's personal devices (i.e., his family iMac that resided in his home and an External Drive).

In compliance with the Agreement, which does not specify a specific time period to return the devices, Chambadal returned the device to the Sack Firm on February 7, 2017, which then delivered these devices to SmartStream on February 16, 2017 – prior to the effective date of his termination, April 7, 2017. (Response 56.1 ¶ 46.) At this time, Chambadal was not unlawfully retaining the devices, but preserving them through the Sack Firm because SmartStream's counsel made vague threats of litigation, and thus the Sack Firm became concerned that the devices being returned to Mr. Chambadal would be tampered with. (Response 56.1 ¶ 58.)

Under these circumstances, the Sack Firm took custody of the devices and mirrored the devices using a third-party service for the sole purpose of preserving evidence. (*Id.*) Ultimately, SmartStream received these devices pursuant to the Agreement (prior to Chambadal's effective terminate date), which does not constitute a breach on Chambadal's part, irrespective of the arbitrary January 12, 2017 deadline set by SmartStream.

As to the other devices, the iMac and External Hard Drive were personal devices of Chambadal's. For one, Chambadal was unaware that SmartStream files resided on the iMac, which he never accessed, opened or used in any event. (Response 56.1 ¶ 27, 31-34, 83.) Chambadal was similarly unaware that SmartStream files were located on the External Hard Drive, which he also did not use or open and all of which were returned to SmartStream. (Response 56.1 ¶ 83.) Ultimately, in compliance with the Injunction Order and TRO, Chambadal made available for CFP inspection two personal devices that and External Hard Drive, on October 27, 2017 and November 9, 2017, respectively. ((Response 56.1 ¶ 88.) The mere timing of his delivery of these additional personal devices to SmartStream (for CFP inspection), which Chambadal worked in good faith with SmartStream to coordinate, does not *per se* violate the Agreement.

Accordingly, the above-referenced circumstances raise disputed facts that preclude the Court's finding the Chambadal's breached the Agreement.

## III. SMARTSTREAM IS NOT ENTITLED TO SUMMARY JUDGMENT ON ITS MISAPPROPRIATION CLAIMS

SmartStream should not be entitled to summary judgment on its misappropriation claims under either federal or state law because there is a genuine issue of material fact as to whether the document Chambadal sent to a third-party constitutes a trade secret. Similarly, SmartStream has not established that it has been damaged as a matter of law from Chambadal's disclosure of this purported trade secret.

### A. <u>Misappropriation Under New York Law</u>

To establish misappropriation under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an

agreement, confidential relationship or duty, or as a result of discovery by improper means. *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999).

While there is no one-size-fits all definition to a trade secret, New York courts generally consider the following factors to determine its contours: "(1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *In re Document Tech. Litig.*, 275 F. Supp. 3d 454, 462 (S.D.N.Y. 2017).

***Whether Chambadal Disclosed A Document That Constitutes A SmartStream "Trade-Secret" Is An Issue of Fact***

The SmartStream presentation that Chambadal sent to a third-party from his personal Yahoo Account on January 27, 2017 does not constitute a trade secret. As a threshold matter, whether information is secret "is generally a question of fact." *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 787 (S.D.N.Y. 2008) (internal quotation marks omitted). Further, the "most important consideration" in determining whether information is a trade secret is "whether the information was secret." *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 298 (2d Cir. 1986).

Here, the Presentation is not a trade secret because SmartStream has made the Presentations, and its contents, public. *Sorias v. Nat'l Cellular USA, Inc.*, 124 F. Supp. 3d 244, 259 (E.D.N.Y. 2015); ("once a 'trade secret' becomes public, it is no longer a trade secret.")

The SmartStream presentation at issue is a high-level company overview/teaser that was (and is) used by SmartStream's management team to get indicative, third party evaluations for the company or to present a high-level view of the health of the company. (This document was

repeatedly disseminated and shared with prospects, clients, potential investors and partners, and at public forums, such as trade shows, and thus the information contained therein, such as the contract value, is generally known by the industry at large. Indeed, a similar Presentation was utilized by a SmartStream shareholder in 2011-2012 and was sent to 65 technology companies (*i.e.*, all our competition). (Response 56.1 ¶ 52, 53, 99.)

As for another example, the schematics in the Presentation are publicly available on SmartStream's website and on the internet. (*Id.*)

Similarly, SmartStream's financials are published every year on Companies House and are accessible to anyone who views the website. It is well-established that "information that is public knowledge or that is generally known in an industry cannot be a trade secret," including information that is available in publications. *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 270 (S.D.N.Y. 2014), *aff'd sub nom*. *Big Vision Private Ltd. v. E.I. du Pont de Nemours & Co.*, 610 F. App'x 69 (2d Cir. 2015) (internal quotation omitted); *see also Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05-CV-9292, 2008 WL 463884, at *12 n.10 (S.D.N.Y. Feb. 20, 2008) ("[M]atters of general knowledge in an industry are by definition not trade secrets.").

Accordingly, while it is not in dispute that Chambadal sent this particular email, there is an issue of fact as to the trade secret nature of this presentation that precludes summary judgment on this claim at this time.

**B. <u>Trade Secret Misappropriation Under The DTSA</u>**

Similarly, the Defend Trade Secrets Act of 2016 ("*DTSA*") creates a private cause of action in favor of the "owner of a trade secret that is misappropriated ... if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). A trade secret under the DTSA includes all forms and types of financial, business, scientific, technical, economic, or engineering information, whether tangible or

intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if: (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. 18 U.S.C. § 1839(3).

Similar to New York law, to succeed on a claim for trade secret misappropriation under 18 U.S.C. § 1831 (the "Defend Trade Secrets Act" or "DTSA"), SmartStream must demonstrate (1) that it possessed a trade secret; and (2) that the defendant used that trade secret in violation of an agreement, confidential relationship or duty, or as a result of improper means. *See, Free Country Ltd v. Drennen*, No. 16 CV 8746 (JSR), 2016 WL 7635516, at *3 (S.D.N.Y. Dec. 30, 2016); *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43 (2d Cir. 1999).

A trade secret is defined as, *inter alia,* technical information, including "programs," "processes," and "codes," if (A) "the owner thereof has taken reasonable measures to keep such information secret; and (B) "the information derives independent economic value ... from not being generally known ... [or] readily ascertainable ... [to] another person who can obtain economic value from the disclosure or use of the information[.]" *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Group, Inc.*, 15CV211LGSRLE, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (citing 18 U.S.C. 1839(3)(A)-(B)).

"Misappropriation" is defined as an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from

or through a person who owed such a duty. 18 U.S.C. § 1839(5). "Improper means" includes breach of duty to maintain secrecy, but "does not include reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6).

The DTSA, thus, "contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *AUA Private Equity Partners, LLC v. Soto*, No. 1:17-cv-8035-GHW, 2018 U.S. Dist. LEXIS 58356, at *12 (S.D.N.Y. Apr. 5, 2018) (citing *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-cv-2177 (SI), 2017 WL 1436044, at *4 (N.D. Cal. Apr. 24, 2017).

Here, it is disputed that the SmartStream presentation Chambadal disclosed to a third-party constitutes a trade secret, and therefore summary judgment must be denied (*see supra* III.A.1.)

## IV. DAMAGES ARE NOT WARRANTED

As stated above (II), SmartStream is not entitled to attorneys' fees and costs because there is genuine issue of material fact as to whether Chambadal breached the Agreement. As described below, SmartStream has not demonstrated, nor could it, that it has been damaged by the disclosure of the Presentation, which in any event, is disputedly not a "trade secret."

***SmartStream Has Not Established Damages for Chambadal's Purported Misappropriation under the DTSA and New York Law***

Even if this Court finds that SmartStream's Presentation is a trade secret under the DTSA and New York law, which it should not, there is simply no evidence that SmartStream suffered damages relating to the disclosure of SmartStream's Presentation.

Damages are measured "either by the plaintiff's losses, or the profits unjustly received by the defendant." *ScentSational Techs., LLC v. PepsiCo, Inc.*, No. 13-CV-8645 (KMK), 2017 WL 4403308, at *9 (S.D.N.Y. Oct. 2, 2017) (citing *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991). SmartStream cannot and has not provided this Court with any basis to determine

lost profits now, or in the future. *Robin Bay Assocs., LLC v. Merrill Lynch & Co.,* No. 07-CV-376, 2008 WL 2275902, at *8 (S.D.N.Y. June 3, 2008) ("dismissing lost profits claims because there was 'no basis for the court to determine lost profits'").

***Punitive Damages Are Extreme And Not Warranted***

As the record demonstrates, this is far from the case that warrants punitive damages.

Punitive damages are only recoverable under misappropriation claims where there is evidence of "gross and wanton misappropriation of trade secrets." *In re Cross Media Mktg. Corp.*, No. 06 CIV. 4228 (MBM), 2006 WL 2337177, at *7 (S.D.N.Y. Aug. 11, 2006). Additionally, whether a party's actions were sufficiently "'gross and wanton' is a test is a question best answered by the finder of fact." *Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 267–68 (S.D.N.Y. 2005); *Loughry v. Lincoln First Bank,* 67 N.Y.2d 369, 378, 502 N.Y.S.2d 965, 494 N.E.2d 70 (1986) ("the decision to award punitive damages in any particular case, as well as the amount, are generally matters within the sound discretion of the trier of fact.")

As stated above, Chambadal promptly and timely delivered the SmartStream Devices to SmartStream pursuant to the Agreement (*see supra* at II). Similarly, Chambadal delivered for inspection the personal devices (his iMac and External Hard Drive). It must be noted that the Agreement does not specify a time or date that these devices were to be returned to SmartStream. Indeed, this is not the "hostage" situation Plaintiff describes. Throughout the entirety of the device retrieval process Defendant and Plaintiff, by and through their respective counsel, were in communication to return the devices in question. (Response 56.1 ¶ 58, 63, 88.) During this time frame, it is undisputed that Chambadal did not access or otherwise utilize any information that Plaintiff deems "confidential" or a "trade secret." [ALEX – CONFIRM]

Moreover, Defendant complied with the Court's TRO and Injunction Order.

As to the TRO, Defendant mirrored the device, by and through counsel, only to ensure that the devices were not tampered with in connection with the threatened litigation by SmartStream and ensured and represented to SmartStream that the information and property would be protected. (Sack Aff. ¶10-23.) Furthermore, Chambadal did not violate the TRO by the SmartStream document to Axiom, a non-competitor to SmartStream (that operates in a completely different space), because, as stated above, the document contains information that is readily and publicly available. (56.1 ¶ 77-80.) For the External Hard Drive, Chambadal used the back-up program to extract his personal photographs, not to copy SmartStream's confidential information. (Response 56.1 ¶ 60, 83.)

As to the Injunction Order, Defendant maintains that his July 22, 2019 [?????] was consistent. (56.1.). Furthermore, Chambadal, by and through counsel worked in good faith to coordinate and accommodate the parties' schedule in completing the Computer Forensics Practice ("*CFP*") inspection of Mr. Chambadal's devices, electronic accounts to comply with the Court's Consent Order for Injunction, entered on August 1, 2017. Defendant also complied with the Court's October 12, 2017 Order in arranging for the return of the hard drive at issue.

Accordingly, this conduct does not rise to the level of "gross and wanton" to permit the recovery of punitive damages and Plaintiff's Motion as to this issue should be denied.

## CONCLUSION

For the reasons stated above, this Court should deny SmartStream's Motion for Summary Judgment in its entirety.

Dated: April 12, 2019
New York, New York

Respectfully submitted,

**SACK & SACK, LLP**

By: /s/ Jonathan Sack
Jonathan S. Sack Esq.
70 East 55th Street, 10th Floor
New York, New York 10022
Telephone: (212) 702-9000
Fax: (212) 702-9702

*Attorneys for Defendant Philippe Chambadal*